UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| v. | : | 3-03-CR-92 (JCH) |
| | : | |
| TROY COLEMAN | : | |
| Defendant. | : | DECEMBER 22, 2004 |

**RULING ON DEFENDANT'S RENEWED MOTION FOR AN ACQUITTAL AND MOTION FOR A NEW TRIAL [DKT. NOS. 108 and 109]**

**I.   FACTS**

On July 23, 2004, a jury convicted Troy Coleman of one count of possession with intent to distribute of fifty grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii).

The government called four witnesses in the course of its case-in-chief:  Peter Borysevicz, Joseph Amato, Robert Burgos, Michael King, and Cynthis Novello. Borysevicz is a Special Agent employed by the Drug Enforcement Administration ("DEA").  Amato and Burgos are detectives employed by the Manchester and Hartford Police Departments respectively.  Amato is currently assigned to the Hartford DEA task force.  Novello is an employee in the DEA Northeast Laboratory.

Michael King was arrested by the DEA task force on February 11, 2003.  Tr. Trans. 7/19/04 [Dkt. No. 131] at 168.  Upon his arrest, he offered his cooperation with authorities.  Id.  Borysevicz, Amato, and Burgos testified that on February 14, 2003, they arranged for King to negotiate a sale of cocaine base with the defendant, Troy Coleman.  While their trial testimony established the procedure used by the government

to utilize a cooperator in order to obtain evidence regarding sale of illicit drugs, they were not able to provide direct testimony to the sale of cocaine base by Coleman to King because at the time of the sale, they could neither see nor hear King and Coleman.

King, however, testified that a few days after his arrest in February 2003, he bought crack cocaine from an individual he know as "Pimp"; in the courtroom he identified that individual as the defendant, Troy Coleman. Tr. Trans. 7/19/04 [Dkt. No. 131] at 170. King testified that the day before the sale, he called Coleman to negotiate a sale for 63 grams (two and a half ounces) of cocaine for $1500. Id. at 172. King testified that on the day of the planned sale, he and Coleman spoke on the phone and that they confirmed the sale and established a new meeting place in order to avoid the police. When they met at the new meeting place, on Hampton Street, King picked up Coleman. Id. at 184. King drove until Coleman instructed that he pull over. Id. According to King's testimony, Coleman signaled with his hands that he wanted $1600 for the cocaine base. Id. at 186. King testified that they argued over the price until Coleman got out of the vehicle, threw the drugs onto the passenger seat, took the money that King then threw onto the seat, and left. Id. at 188.

## II. POST-TRIAL MOTIONS

### a. Standard

#### 1. Rule 29

Rule 29(a) of the Federal Rules of Criminal Procedure provides that district courts "must enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). "A defendant bears a heavy burden in challenging the sufficiency of the evidence." United States v. Henry, 325 F.3d 93, 103 (2d Cir. 2003). In deciding such a motion, the court "view[s] the evidence in the light most favorable to the government and draw[s] all reasonable inferences in the government's favor." United States v. Johns, 324 F.3d 94, 97 (2d Cir. 2003). A jury's verdict must be sustained unless "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002). However, a jury may not base its verdict on "pure speculation" or "guesswork." United States v. Thai, 29 F.3d 785, 818-19 (2d Cir. 1994). The court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (internal citations omitted). With respect to witness testimony, "it is well-settled that when reviewing the sufficiency of the evidence we 'defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony.'" United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) (quoting United States v. Bala, 236 F.3d 87, 93-94 (2d Cir. 2000)). The Second Circuit in Glenn found that "even though each of the Government witnesses (except [one]) had pled guilty to large-scale drug dealing and testified pursuant to cooperation agreements with the Government and even though their testimony was pock-marked with inconsistencies, at this stage we credit what they said." Id.

    **2. Rule 33**

Rule 33 provides that the court may grant a new trial "if the interest of justice so

requires." FED. R. CRIM. P. 33.  The rule gives the trial court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (internal citation omitted).  The district court, when examining the entire case, must make an objective evaluation of the evidence and determine whether "'competent, satisfactory and sufficient evidence' in the trial record" supports the jury's verdict.  Id.  Unlike in a Rule 29 motion, where the court must draw every inference in favor of the government, in a Rule 33 motion the court is entitled to "weigh the evidence and in doing so evaluate for itself the credibility of the witnesses."  United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)  (internal citation omitted).  Although a trial court has substantially more discretion to grant a new trial under Rule 33 than it does to grant a motion for acquittal under Rule 29, the authority should be exercised "sparingly" and only in "the most extraordinary circumstances."  Ferguson, 246 F.3d at 133.  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  Id.  A manifest injustice is found where the court has "a real concern that an innocent person may have been convicted."  Sanchez, 969 F.2d at 1414.

    **b.**    **Defendant's Motion for Acquittal**

When considering a Rule 29 Motion for Acquittal, the court must credit the jury's assessment of witness credibility.  See Glenn, 312 F.3d at 64.  Coleman argues that the three law enforcement agents did not have direct knowledge that Coleman sold cocaine base to King because they were not present when the alleged sale took place and the Kel transmitter, which allowed the task force agents both to communicate with King and record his interactions with other people, had failed at that time.  Memo. of

Law in Supp. of Def.'s Renewed Mot. for J. of Acquittal [Dkt. No. 109] at 10-11. Therefore, the only government witness who could provide direct evidence that Coleman had sold cocaine was King, a cooperator. While the jury may have had reason to doubt the veracity of King's testimony, it is not for the court to question the jury's findings regarding witness credibility. Indeed, the jury heard testimony regarding the nature of King's cooperation and the types of remuneration awarded by law enforcement to cooperators. Tr. Trans. 7/19/04 [Dkt. No. 131] at 43, 45. The jury also heard testimony regarding King's criminal history, involving largely drug offenses, and the sentence he was serving at the time of trial. Id. at 165-66. Additionally, King testified that, despite his cooperation, he was later sentenced to serve time in prison for a drug offense. Id. at 191-92. The jury had the opportunity to weigh the factors in favor of and against King's credibility. It is not the court's role to question its analysis or its factual findings when considering a Rule 29 Motion for Judgment of Acquittal.

Therefore, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). King's testimony was sufficient to sustain guilty verdict. He testified that he purchased 63 grams of cocaine base from Coleman. His testimony also evidenced Coleman's knowledge and intent to sell cocaine base. Thus, the government provided direct evidence to prove all of the elements of the offense charged. The court cannot conclude that no rational trier of fact could have found that the government proved Coleman's guilt of the charged offense beyond a reasonable doubt.

    c.    **Defendant's Motion for a New Trial**

The first basis Coleman provides in support of his motion for a new trial is that the jury verdict is contrary to the weight of the evidence. Rule 33 provides that the court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33. Accordingly, the court's discretion under Rule 33 is broader than that under Rule 29. Nevertheless, the court is obliged to restrict its intrusion into the jury's role as fact-finder. "The district court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury." U.S. v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Autuori, 212 F.3d 105, 120 (2d Cir.2000)). The court is limited in its ability to scrutinize the credibility of a witness whose testimony the jury decided to believe. "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. Where testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation." Sanchez, 969 F.2d at 1414. The court can find no sufficient reason to discredit King's testimony that he purchased 63 grams of cocaine base from the defendant on February 14, 2003. While King certainly had motive to cooperate with the authorities, he had little motive to lie about the source from whom he purchased cocaine. Nothing in his testimony rose to the level of being "patently incredible" or in defiance of "physical realities." As Coleman argues throughout his memorandum, it is possible that the circumstantial evidence provided by the tape recordings made of King's phone calls and conversations on February 14, 2003 could be explained by some events other than Coleman's knowing possession of, with intent to sell, cocaine base. Memo. of Law in

Supp. of Def.'s Mot. for New Trial [Dkt. No. 108] at 5-7.  That there was circumstantial evidence in support of Coleman's guilt does not, however, undo the fact that King provided direct evidence in support of Coleman's conviction.  Furthermore, the court can find no sufficient reason to cast doubt on the credibility of that evidence to grant a motion for a new trial.

Lastly, Coleman argues that the court's instructions to the jury were defective. Specifically, Coleman argues that he was prejudiced because the court failed to instruct the jury as he requested with respect to paid informants and the testimony of law enforcement officers.  Id. at 10.  A "missing requested instruction" may be cause for vacating a conviction "if (1) the requested instruction was legally correct; (2) 'it represents a theory of defense with basis in the record that would lead to acquittal'; and (3) 'the theory is not effectively presented elsewhere in the charge.'"  United States v. Prawl, 168 F.3d 622, 626 (2d Cir. 1999) (quoting United States v. Vasquez, 82 F.3d 574, 577 (2d Cir. 1996)).

"District courts are under no obligation to give requested charges word for word." Prawl, 168 F.3d at 628 (2d Cir. 1999).  Having requested a charge regarding the credibility of a cooperating witness, Coleman was "entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence, and that specifies the ways (by catalog or example) that a person so situated might be particularly advantaged by promoting the prosecution's case."  Id.   The law is well-established in this circuit "that trial judges should call the jury's attention to their duty to scrutinize the testimony of accomplices and informers."  United States v. Swiderksi, 539 F.2d 854, 860 (2d Cir.

- 8 -

1976).  In <u>Swidkerski</u>, the Court of Appeals found that the trial court ought to have instructed the jury to "scrutinize the testimony of [a paid informer] with <u>great care</u>."  <u>Id.</u> (emphasis added).

The court's instructions regarding cooperating witnesses satisfied the court's duty in this regard.  The court instructed the jury regarding questions of credibility generally.  The jury instructions stated that, "[i]f [the jury should] find that any witness, whose testimony [it is] considering, may have an interest in the outcome of this trial, then [it] should bear that factor in mind when evaluating the credibility of his testimony and accept it with care."  Jury Instructions [Dkt. No. 120] at 18.  More particular to the testimony of a cooperator, the court's instruction that the testimony of a cooperating witness ought to be considered with "great care" and "particular caution" alerted the jury to the need to scrutinize King's testimony.  Jury Instructions [Dkt. No. 120] at 24-25 ("cooperating witness testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of the testimony to believe").  Coleman's request that the jury be instructed to consider King's testimony with "greater care" rather than "great care" cannot be said to be a more accurate reflection of the law.  <u>See</u> <u>Swiderski</u>, 539 F.2d at 860; <u>see</u> <u>also</u> <u>United States v. LoRusso</u>, 695 F.2d 45 (2d Cir. 1982).  Furthermore, the jury instruction provided the jury with an understanding of the ways in which a cooperator may benefit by furthering the prosecution's case.  Specifically, the court instructed the jury as follows:

> You should bear in mind that a witness who, by testifying, has the potential to reduce his sentence or to obtain a lower sentence has an interest in this case different than any ordinary witness. You should ask yourself whether these witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed

> or hoped that they would some receive favorable treatment by testifying falsely? Or did they believe that their best interests would be served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth? Did this motivation color his testimony? You must examine such witness's testimony with caution and weigh it with great care. If, after scrutinizing the testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves."

Jury Instructions [Dkt. No. 120] at 24-25.  While the court did not adopt the defendant's proposed jury instructions verbatim, it satisfied the standard provided in Prawl and caused no prejudice to the defendant.

Similarly, while the court did not elect to use Coleman's proposed charge with respect to the credibility of testimony by law enforcement officers word for word, the court did instruct the jury to consider the testimony of law enforcement officers with the same critical eye used to consider other witnesses' testimony:

> Some of the testimony that you have heard has been the testimony of law enforcement officers. The testimony of a law enforcement officer is entitled to no greater or lesser weight than any other witness's testimony. A law enforcement officer who takes the witness stand subjects his testimony to the same examination and the same tests that any other witness does. When you consider a law enforcement officer's testimony, you should use the same tests for truthfulness that you use with other witnesses.

Jury Instructions [Dkt. No. 120] at 21.  Additionally, while the court did not instruct the jury regarding impeachment of law enforcement officers' testimony specifically, it did instruct the jury regarding impeachment generally.[1]  In fact, the instruction on

---

[1] "A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.  If you find that a witness testified untruthfully in some respect, you may

impeachment immediately preceded the instruction on law enforcement officers' testimony.

The court cannot find that the defendant's theory of defense was not adequately presented in the charge.  United States v. Vasquez, 82 F.3d 574, 577 (2d Cir. 1996).  Furthermore, the court cannot find that the small differences between the proposed and final jury charges could have prejudiced the defendant.  United States v. Ramirez, 973 F.2d 102, 105 (2d Cir. 1992).

### III.    CONCLUSION

For the reasons discussed above, defendant Coleman's motion for a judgment of acquittal and motion for a new trial are DENIED.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 22nd day of December, 2004.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

consider that fact in deciding what credence you will attach to that witness's testimony.  Considering that fact and all other relevant evidence, you may accept or reject the testimony of such a witness, in whole or in part.  In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency and whether that explanation made sense to you."  Jury Instructions [Dkt. No. 120] at 20.