UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 3:03CR92(JCH) |
| vs. : | |
| : | |
| TROY COLEMAN : | AUGUST 15, 2005 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RE-SENTENCING POST-BOOKER

**I. BACKGROUND**

On October 14, 2003, a Federal Grand Jury sitting in Bridgeport, Connecticut returned a four-count Superseding Indictment charging Troy Coleman and his brother Timothy Coleman with violating 21 U.S.C.§ 846 (conspiring to possess with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine) in Count I.  The Superseding Indictment also charged Troy Coleman with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) (possession with intent to distribute 50 grams or more of a mixture containing a detectable amount of cocaine base) in Count II and charged Timothy Coleman with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii) (possession with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine) in Count III.  Count IV set forth a claim of forfeiture of certain property belonging to Troy Coleman pursuant to 21 U.S.C. §853.

On April 5, 2004, Timothy Coleman pleaded guilty to Count I of the Superseding Indictment. On July 6, 2004, the Government filed a Motion to Dismiss Counts I and IV (the conspiracy and forfeiture counts, respectively) as to Troy Coleman and proceeded against Mr. Coleman at trial only as to Count II.

Jury Selection took place on July 12, 2004, the trial commenced on July 19, 2004 and evidence concluded on July 20, 2004. The jury returned a guilty verdict on Count II of the Superseding Indictment on July 22, 2004. On October 22, 2004 the Court sentenced Mr. Coleman to 360 months in prison and ten (10) years of supervised release with special conditions pursuant to the Federal Sentencing Guidelines.[1] The Notice of Appeal and the Appellant's Brief were timely filed with the Second Circuit Court of Appeals. Thereafter, the Second Circuit remanded the case back to this Court to determine whether this Court would have entered a non-trivially different sentence had the Federal Sentencing Guidelines (hereafter "the Guidelines") been advisory at the time of sentencing.

## II. ARGUMENT

### A. The Court likely would have imposed a non-trivially different sentence if the Guidelines had been advisory at the time of sentencing

---

[1] In the Defendant's September 29, 2004 Memorandum in Aid of Sentencing, in Footnote 3, the Defendant reserved the right to challenge the validity of his sentence pursuant to the Federal Sentencing Guidelines pending the outcome of the United States v. Booker, No. 04-104, 2004 U.S. LEXIS 4788, and United States v. Fanfan, No. 04-105, 2004 U.S. LEXIS 4789, cases. The United States Supreme Court handed down its opinion on these cases on January 12, 2005, after this case was already on appeal. See United States v. Booker, 125 S.Ct. 738 (2005).

Upon review of the sentencing hearing transcript, the Defendant believes this Court would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory at the time of his sentencing.

In the second part of the Supreme Court's analysis of the constitutionality of the the Guidelines in United States v. Booker, 125 S.Ct. 738 (2005), the Court recognized that "[it] must decide whether or to what extent, 'as a matter of severability analysis,' the Guidelines 'as a whole' are 'inapplicable...such that the sentencing court must exercise its discretion to sentence the defendant within the maximum and minimum set by statute for the offense of conviction.'" Id. at 756. The Supreme Court held that the mandatory nature of the Guidelines that impose binding requirements on sentencing judges is incompatible with the holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. Therefore, the district courts are no longer bound to apply the Guidelines, id. at 766, and may now use their discretion in sentencing defendants within the maximum and minimum set by statute for the offense of conviction.

At Troy Coleman's sentencing, this Court was not required to make any factual findings concerning any sentencing factors. In other words, there were no issues of

leadership, relevant conduct, firearm possession or obstruction of justice, as was the case in Booker. Id. at 747. The only determination this Court needed to make in order to sentence Mr. Coleman to 360 months (30 years) of incarceration pursuant to the Guidelines concerned his prior criminal history, which is beyond the holding in Part I of Booker. Id. at 756; see also U.S.S.G. §4B1.1. Nonetheless, if not bound by the Guidelines, this Court, in its discretion, having made the same findings concerning Mr. Coleman's criminal history, could have sentenced him to 240 months (20 years) under the statute for the offense of conviction, 21 U.S.C. §841(b)(1)(A)(iii).[2] Section 841(b)(1)(A)(iii) of Title 21 of the United States Code provides, in pertinent part, that "if any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment…"

In light of this Court's freedom from the mandatory nature of the Guidelines and its ability to weigh all of the factors listed in 18 U.S.C. §3553(a), it may now use its discretion in sentencing the Defendant within the maximum and minimum sentences set by statute for the

---

[2] On March 22, 2004, the Government filed a notice pursuant to 21 U.S.C. §851 indicating that it intended to rely upon one prior felony conviction of the Defendant which occurred on October 21, 1998 in proceeding against Mr. Coleman in this case. Though this court was permitted to consider additional convictions, pursuant to the Guidelines, in sentencing Mr. Coleman as a career offender, when proceeding solely under the statutes, as this court may now do, the court is only permitted to consider those convictions set forth in the Government's notice pursuant to 21 U.S.C. §851. See Sentencing Hearing transcript at p. 4. This means that Mr. Coleman's exposure under the statutes is twenty years to life rather than a mandatory term of life in prison.

offense of conviction. The Defendant believes the Court, at the time of sentencing, would have issued a lower sentence than 360 months of incarceration, if it was not confined to the rigid criteria of the Guidelines.

During sentencing, the Court noted that "once I get past the large number of interactions and convictions, is that over this period in his life, almost 20 years, none of the convictions involved or even charged conduct initially that we know of, involved any imminent risk of harm or actual harm to someone and second, none of the quantities involved don't strike me as this is a major drug dealer here." <u>See</u> Sentencing hearing transcript (hereafter "transcript") at pp. 18-19. The Court also found the Defendant's educational background as "striking," and noted that, although the Defendant's school history did not satisfy a departure for a mental condition under the Sentencing Guidelines, it did cause the court to "pause." <u>See</u> transcript at p. 21-22. The Court noted that Mr. Coleman's learning difficulties "perhaps [go] a long way in explaining why Mr. Coleman ended up with a life he did..." <u>See</u> transcript at p. 28. The Court further discussed the difficulty it had in making a "combination departure" under the Guidelines because, as codified, "they present a stricter set of criteria to qualify as a basis to depart than that originally conceived and described in the <u>Rioux</u> case." <u>See</u> transcript at p. 25. Because of these issues, the Defendant believes the Court felt constrained under the Guidelines and did not depart downward because the

5

Defendant was unable to satisfy the rigid Guidelines criteria. The Court noted that "I cannot conclude as much as I would like to that these circumstances as outlined by Attorney Sobol present extraordinary circumstances." See transcript at p. 28. "While if it were the court's decision alone to make, it would be my conclusion that even confined for a minimum of twenty years, that the ***court would view the thirty year sentence as longer than that necessary to accomplish the goals of sentencing***." See transcript at p. 26 (emphasis added).

During the sentencing hearing, the Court raised the issue that the earlier Guidelines, in conjunction with the Rioux case, may be more favorable to the Defendant with regard to an argument for downward departure based on a combination of factors. See transcript at p. 25; see also U.S.S.G. §5K2.0. The 2003 and 2004 Guidelines, however, require each individual factor for a downward departure to be present to a ***substantial degree*** in order for the Court to depart based on a combination of factors. U.S.S.G. §5K2.0. Since the alleged offense in this case, the drug deal, took place on February 12, 2003, and the 2003 Guidelines, which were used in this case to calculate Mr. Coleman's offense, were not in effect until November 5, 2003, the Defendant submits that the 2002 Guidelines should be applicable in this case.

A court is to apply the version of the Guidelines in effect at the time of sentencing unless there is an ex post facto problem. See 18 U.S.C. §3553(a)(4)(b); See generally United States v. Adeniyi, 912 F.2d 615, 618 (2d Cir. 1990). If the application of a Guideline

amendment that takes effect after the defendant commits his offense increases the punishment for that offense, the Ex Post Facto Clause is violated. See United States v. Rivers, 50 F.3d 1126, 1129 (2d Cir. 1995). "A version of the sentencing guidelines is to be applied in its entirety," and the "sentencing court has no authority to pick and choose, taking one provision from an earlier version of the guidelines and another from a later version." United States v. Keller, 58 F.3d 884, 890 (2d Cir. 1995).

> In assessing whether a sentencing provision violates the ex post facto clause, a court must compare the two statutory schemes as a whole, rather than each provision, to determine 'if the new [scheme] may be fairly characterized as more onerous.' Dobbert v. Florida, 432 U.S. 282, 294 (1977) (evaluating new procedures for imposition of the death penalty); see also Miller v. Florida, 482 U.S. 423, 431 (1987). In the context of the Sentencing Guidelines, the "whole scheme" to be evaluated includes all of the provisions applicable to a defendant's conduct, not just one amendment or enhancement. See United States v. Stephenson, 921 F.2d 438, 441 (2d Cir. 1990) ('Applying various provisions taken from different versions of the Guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines.').

United States v. Ruggiero, 100 F.3d 284, 293 (2d Cir. 1996).

Since the 2002 Guidelines scheme overall appears to be more favorable to the Defendant, there is an ex post facto issue in this case, and the Court therefore must apply the 2002 Guidelines.

7

In any event, in this new arena where the Guidelines are only advisory, strict adherence to the language of the Guidelines, including the limiting language of §5K2.0, is not necessary. Booker, supra, at 765-66 and Crosby, supra, at 114 explain that sentences will now be reviewed under the standard of reasonableness. The Second Circuit in Crosby advised that:

> [A] sentencing judge would commit procedural error by *mandatorily* applying the applicable Guidelines range that was based solely on facts found by a jury or admitted by a defendant. The Court in its Remedy Opinion made clear that, even though the resulting sentence would not violate the Sixth Amendment, the judge would have erred by mandatorily acting under the now-excised requirement of subsection 3553(b)(1). A sentence explicitly based upon a non-existent statutory provision, even if "reasonable" in length, constitutes error (although possibly "harmless error" or not "plain error"), because of the unlawful method by which it was selected.

Id. at 114-15. With this warning in mind, it is the defendant's position that this Court is not restricted by the rigid language of §5K2.0 in the Guidelines. Should the court wish to depart based on the defendant's family circumstances and learning disability, it may do so under at 18 U.S.C. § 3553(a) analysis.

**B. The Court is now able to weigh all of the sentencing factors outlined in 18 U.S.C. §3553(a) in determining an appropriate sentence.**

The United States Supreme Court and Second Circuit have directed the district courts to utilize the factors set forth in 18 U.S.C. §3553(a), in addition to the Guidelines, in deciding reasonable sentences for the defendants before them. <u>Booker</u>, <u>supra</u>, at 766; <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. Feb. 2, 2005). These factors include the nature and circumstances of the offense and history and characteristics of the defendant, the need for the sentence, the kinds of sentences available, any pertinent policy issues, the need to avoid sentencing disparities among similar defendants and the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a). Below is an analysis of these statutory factors as they pertain to Troy Coleman. The Defendant also refers the Court to his Memorandum in Aid of Sentencing dated September 29, 2004 for further details.

1. **Nature and Circumstances of the Offense**

As detailed in the Defendant's Memorandum in Aid of Sentencing, Mr. Coleman was found guilty by jury verdict of knowingly and intentionally possessing with intent to distribute and distributing 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)(iii). The charges against Mr. Coleman stemmed from an investigation led by the DEA as a result of a tip from a confidential informant. The same confidential informant allegedly conducted a controlled purchase of cocaine base with Mr. Coleman while under the surveillance of the

DEA and task force agents. However, upon completion of the alleged purchase, the agents did not arrest Mr. Coleman. Over a month later, the agents arrested Mr. Coleman, who was not in possession of any contraband at the time.

### 2. History and Characteristics of the Defendant

Though portions of the Guidelines specifically discourage or outright prohibit consideration of the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1) expressly requires their consideration. In determining a reasonable sentence, whether or not within the Guideline range, the Court may now consider such characteristics as the age of the defendant, his education and vocational skills, his physical condition, his employment record, his family ties and responsibilities as well as his civic and charitable contributions. United States v. Ranum, 353 F.Supp.2d 984, 986 (E.D.Wis. 2005). "Thus, in cases in which a defendant's history and character are positive, consideration of all of the §3553(a) factors might call for a sentence outside the guideline range." Id. Furthermore, there is no language in 18 U.S.C. §3553(a) which requires the Court to consider "exceptional," "extraordinary" or "substantial" circumstances in making the appropriate sentencing determinations under the statute. See 18 U.S.C. §3553(a).

In light of this new mandate to consider the history and characteristics of the defendant, this portion of the memorandum will summarize the relevant history and

characteristics of the defendant which are fully detailed in the Defendant's Memorandum in Aid of Sentencing. Mr. Coleman is currently thirty-eight years old. He was born and raised in the urban environment of Hartford, Connecticut. His family has a history of being in trouble with the law, including his father who passed away in 1993 while serving a term of imprisonment. It was in this setting that Mr. Coleman was raised with his three brothers and two cousins.

Early on, Mr. Coleman experienced difficulties in school. By the eighth grade, Troy experienced a "severe reading deficit, low math and language skills, auditory and visual memory and discrimination skills, and negative behavior toward school related responsibilities." See Pre-Sentence Report at ¶72. Mr. Coleman never completed high school, having been expelled for fighting. It was during this time period that Mr. Coleman became involved with drugs and alcohol. In addition to these issues, Troy later developed a gambling problem.

Despite Mr. Coleman's battle with substance abuse and his past legal issues, he has been a good father to his five children. Prior to his incarceration in this case, Mr. Coleman had maintained daily contact with all of his children and provided for their financial needs.

Combined, these characteristics paint a picture of a man who has struggled throughout his life to be a productive part of society. Plagued from childhood with a learning disability

and faced with streets of Hartford as his teacher, Mr. Coleman unwittingly chose the path of criminal activity to survive. Despite his troubles, Mr. Coleman cares deeply for his children and had been good father and provider prior to his incarceration.

### 3. Need for the Sentence

The need for the sentence imposed is determined by the seriousness of the offense, promotion of respect for the law, the need for a just punishment, the need for deterrence and the needs of the defendant. 18 U.S.C. §3553(a)(2).

As the undersigned argued during the sentencing hearing, a twenty year sentence, as opposed to thirty years, is substantially strict to reflect the seriousness of the alleged offense in this case, promote respect for the law and provide just punishment. See transcript at p. 15-16.   Mr. Coleman is presently thirty-eight years old. If he served a twenty year sentence, he would be close to sixty years old upon his release and would still have the ability to start his life over. On the contrary, if Mr. Coleman served a thirty year sentence, he would be nearly seventy upon release. This ten year difference in sentences is substantial. If Mr. Coleman's thirty year sentence is permitted to stand, he will be needlessly deprived of his freedom for an additional ten years that the statute he was convicted under does not require, and the Court did not believe was necessary to accomplish the goals of sentencing.   See transcript at p. 26.

**4. Kinds of Sentences Available, Need to Avoid Sentencing Disparities and Need to Provide Restitution**

The Guideline range was calculated in the PSR at 360 months to like. Under the circumstances of this case, however, the range should not be entitled to significant weight. Most importantly, it should not be considered to be the "starting point" for considering the other §3553(a) factors.

In United States v. Ranum, supra, at 986, Judge Adelman concluded that the Guidelines are not presumptive, but are truly advisory, and should be treated as one factor to be considered in conjunction with other factors that Congress enumerated in §3553(a). Judge Pratt followed Ranum, in United States v. Myers, 353 F.Supp.2d 1026, 1029-30 (S.D. Iowa 2005):

> At first blush, a system of discretionary sentencing would appear to invite what Congress hoped to avoid, unfairness at sentencing. The Supreme Court in Booker, however, reminded judges and the public that true uniformity exists not in a one-size-fits-all scheme, but in "similar relationships between sentence and real conduct." 125 S.Ct. 738, at 21. This is the guiding principle at work in Booker. This Court will endeavor, then, to square real conduct presented by the evidence presented concerning a particular defendant, with the public interests expressed through the sentencing statute, in order to deliver a judgment in a manner as even-handed and reasonable as humanly possible.

Id.

While, under the Guidelines, this Court did not believe that Mr. Coleman's tragic background and personal circumstances were "extraordinary" enough to permit the Court to grant a downward departure, under the 18 U.S.C. §3553(a) factors, the Court is not restricted by the same language. If the Court were to impose a non-Guidelines sentence, it would only be bound by the statutory requirement set forth in 21 U.S.C. § 841(b)(1)(A)(iii), requiring a mandatory minimum of 20 years imprisonment. Since Mr. Coleman remains subject to the statutory mandatory minimum sentence of 20 years, which is still a significant period of time, any concern over sentencing disparities is considerably weakened. Furthermore, restitution is not an issue in this case.

### 5. Policy Issues

The Guidelines are founded on a number of policy considerations. According to U.S.S.G §5H, certain defendant characteristics are not ordinarily relevant in considering whether a downward departure is warranted. For those characteristics to warrant a departure under the Guidelines, they must be present to an "extraordinary" degree. Despite these warnings from the Guidelines, however, 18 U.S.C. §3553(a) now requires a review of the defendant's history and characteristics in deciding a reasonable sentence, without the restrictive language. In addition, the policy behind 18 U.S.C. §3553(a) is to provide "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth

paragraph 2," that is to reflect the seriousness of the offense, promote respect for the law, provide a just punishment and provide for deterrence and the needs of the defendant. As the Defendant has already pointed out, the Court did not think the thirty year sentence it imposed was necessary to accomplish the goals of sentencing. See transcript at p. 26.

## III. CONCLUSION

For the foregoing reasons, the Defendant requests the Court reconsider the sentence it imposed on the Defendant on October 22, 2004 and impose a sentence in line with the maximum and minimum sentence range set by statute for the offense of conviction.

Respectfully Submitted,
The Defendant, Troy Coleman

By: _____
Alan J. Sobol
Fed. Bar No. CT00955
O'Connell, Flaherty & Attmore, LLC
280 Trumbull Street, 23rd Floor
Hartford, CT 06103-3598
Telephone: (860) 548-1300
Facsimile: (860) 548-0023

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motion to Continue Jury Selection was served via U.S. Mail, on the following parties and counsel of record this 15th day of August, 2005:

Michael J. Gustafson, AUSA
United States Attorney's Office
157 Church Street, 23rd Floor
New Haven, CT 06510

_____
Alan J. Sobol