UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:03CR92 (JCH) |
| v. | |
| TROY COLEMAN | January 23, 2006 |

**UNITED STATES' MEMORANDUM IN AID OF RE-SENTENCING**

**I. Background**

On July 23, 2004, the defendant Troy Coleman was convicted of distributing 50 grams or more of crack cocaine following a two day jury trial. The defendant's post-trial motions challenging that conviction have been rejected by this Court, and on October 12, 2004, the defendant was sentenced principally to 360 months imprisonment. In imposing this lengthy sentence, the Court determined that given the defendant's criminal history, he was a career offender pursuant to United States Sentencing Guidelines § 4B1.1 and that none of the defendant's arguments justified a downward departure under the Guidelines.

The defendant filed a timely appeal, challenging both his conviction and sentence, and while that appeal was pending, the Supreme Court rendered its decision in United States v. Booker, 125 S.Ct. 738 (2005).

In Booker, the Supreme Court held that the Sentencing Reform Act of 1984 was unconstitutional to the extent it mandated that district courts impose sentences in conformity with the United States Sentencing Guidelines, which entail judicial fact-finding by a preponderance of the evidence. In United States v. Crosby, 397 F.3d 103 (2d Cir.2005), the Second Circuit held that in any case in which a defendant appeals a sentence imposed prior to the Supreme Court's Booker decision, the district court committed "error" if it imposed sentence in conformity with

-2-

the then-binding view that the United States Sentencing Guidelines were mandatory. The Crosby court held that in such cases, a remand is appropriate for the "limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Id. at 116. In doing so, the district court must determine whether it would have imposed a "nontrivially different sentence" in light of Booker. Id. at 118.

> Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with the [Sentencing Reform Act], Booker/Fanfan, and this opinion, including an appropriate explanation, see § 3553(c). From whatever final decision the District Court makes, the jurisdiction of this Court to consider a subsequent appeal may be invoked by any party by notification to the Clerk within ten days of the District Court's decision, see United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994), in which event the renewed appeal will be assigned to this panel.

Id. at 120.

In the present case, the defendant was sentenced prior to the Supreme Court's decision in Booker. In light of Booker and Crosby, it is now clear that the district court committed error by treating the U.S. Sentencing Guidelines regime as mandatory at sentencing. The parties therefore stipulated to a remand.

The Government, moreover, is mindful that although the Court rejected the defendant's arguments for a downward departure under the Guidelines at his original sentencing hearing, the Court stated that "the thirty year sentence [is] longer than that necessary to accomplish the goals of sentencing." See Sentencing Transcript at p. 26. It is clear, therefore, that had the Court treated the Guidelines as advisory and not compulsory, Mr. Coleman would have received a

-3-

sentence of less than 30 years. Accordingly, the Government does not object to the Court vacating the present sentence and imposing a new sentence based on consideration of the factors contained in 18 U.S.C. § 3553(a).

The Government writes further to address these factors that will inform the Court as to where within the 20 to 30 year range a fair, just and reasonable sentence should be imposed.

## II. Sentencing Factors

In addition to calculating a sentencing range under the Guidelines, the Court should consider the factors set forth in 18 U.S.C. § 3553(a) when deciding what is a fair, just and reasonable sentence in this matter.

### 1. Guidelines Calculation

The Court has already completed this analysis. The defendant is a career offender pursuant to U.S.S.G. § 4B1.1. At the October 2004 sentencing hearing, the Court rejected all departure arguments advanced by the defendant. The Guidelines therefore recommend a sentence of 360 months to life imprisonment. The Court imposed a sentence at the bottom of this range – 30 years. The Sentencing Guidelines recommend such an onerous penalty because the defendant's life squarely places him in a unique category of offenders, one who repeatedly commits felony drug crimes notwithstanding incrementally harsher penalties and longer jail terms. The 30 year advisory sentence is one of several factors the Court must consider when resentencing Mr. Coleman.

### 2. Nature and Circumstance of the Offense

The defendant has been convicted of a very serious federal drug trafficking crime. Notwithstanding his protest to the contrary, this Court has upheld the sufficiency of the

-4-

evidence.[1] Drug dealing is an insidious offense that destroys all parts of society. Congress has established extremely serious penalties that reflect the grave threat and harm attendant to drug dealing. All drug defendants face these steep sanctions.

In the case at bar, the defendant's actions show that he is a relatively sophisticated drug dealer as opposed to a young street seller working a corner in his neighborhood. For example, the defendant changed the location of the transaction when he suspected the presence of law enforcement. He directed the informant to a location that required the informant (and the surveillance unit) to drive through a construction zone and thus allow detection of physical surveillance. Continuing to display a level of sophistication commensurate with a seasoned professional, the defendant admonished the informant about mentioning the deal on the telephone and, when they met to exchange drugs for money, the defendant declined to verbalize the terms of the transaction in an attempt to avoid being recorded.

The defendant conducted himself in this way after having sustained several prior drug convictions and having spent time in jail for the same. This set of facts reveals that the lesson the defendant learned from his prior drug trafficking convictions is not that he should stop selling drugs, but rather that he should take precautionary measures to avoid detection when continuing to distribute narcotics.

The timing of the defendant's drug dealing, moreover, underscores the disturbing circumstances of the instant offense. Upon release from prison in late 1999, after having spent over 7 years in jail, the defendant quickly resumed his life of crime. First, he joined his brother

---

[1] The defendant still maintains his innocence, arguing in the "nature and circumstances" portion of his re-sentencing memorandum that the "confidential informant allegedly conducted a controlled purchase of cocaine base with Mr. Coleman while under the surveillance of the DEA and its task force agents." Def's Memo at p. 11-12.

-5-

Tim in a conspiracy to buy kilogram quantities of cocaine. In addition, the informant who testified against Coleman at trial indicated that by January 2003 he had been buying crack cocaine from Coleman for approximately one year. This chronology demonstrates that the defendant cannot be stopped from selling drugs and engaging in criminal conduct short of being placed in jail.

Thus the nature and circumstances of this offense augur in favor of a sentence within – or close to – the range established by the Sentencing Commission.

### 3. History and Characteristics of the Defendant

The defendant has led a life of crime. He is not a first time offender. In fact, he has sustained 16 convictions in the state court, two federal convictions – the first at age 24 – and was noncompliant while on supervised release. See Sentencing Transcript at p. 11. Mr. Coleman's record constitutes a strong indicator of his total disregard for the law. As the Pre-Sentence Report explained:

> [Coleman] is no stranger to the criminal justice system, nor to this court. In 1992, he was sentenced to prison for having been found to be a felon in possession of a firearm. While serving a term of supervised release, the defendant incurred new criminal charges and was remanded to custody. On the State level, Mr. Coleman has incurred no fewer than sixteen convictions. He has proven himself to be a dangerous habitual offender who has neither regard for the law nor respect for the citizenry whose lives his criminal conduct endangers. Though he considers himself to be devoted to his five children, his actions belie any credibility to that claim as he persists to engage in the very activities that result in his certain incarceration.

PSR at ¶ 88. The defendant began compiling an arrest record when he was 18 years old and save for periods of incarceration, he has continued to commit crime. The government outlined the defendant's criminal history in its original sentencing memorandum, and refers the Court to that

-6-

document. In short, the defendant's abysmal record – one in which he has amassed 28 criminal history points[2] irrespective of the career offender status – militates against a dramatic departure from the range suggested by the Sentencing Commission.

Review of the defendant's history leads to one conclusion: Mr. Coleman is an incorrigible criminal. There is nothing to suggest that once released from prison he will refrain from returning to the commission of crime.

The defendant points to his disadvantaged youth and upbringing, a learning disability, and an undocumented gambling problem as explanation for his atrocious criminal record. While this may explain some of his early crimes, it cannot be the sole or main cause of the life of crime he has led. For example, while some of the defendant's siblings and cousins also have been imprisoned for drug trafficking, others have eschewed criminal activity and instead chosen to lead more meaningful lives. See PSR at ¶ 54.

Nothing in the record before the Court provides for the conclusion that Mr. Coleman "unwittingly" chose the path of criminal activity to survive. Def's Memo at p. 12. Rather, the defendant's criminal history, marked by leniency from the criminal justice system early on, followed by incrementally harsher punishment as Mr. Coleman chose to continue to commit crime – even while on supervised release – shows that his actions are the product of a conscious decision to live outside of the law.

**4. The Need for the Sentence Imposed**

Section 3553(a) dictates that in determining a sentence, courts are to consider the need to:

---

[2] To be placed in the highest criminal history category – category VI – a defendant must have 13 or more criminal history points. Mr. Coleman more than doubles that figure.

-7-

reflect the seriousness of offense; promote respect for the law; provide just punishment for the offense; provide adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training. In addition, district courts are to consider the sentencing range established by the Guidelines, 18 U.S.C. § 3553(a)(4)(A), pertinent policy statements issued by the Sentencing Commission, 18 U.S.C. § 3553(a)(5), and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

In his re-sentencing memorandum, the defendant aptly points out that the 10 year divide between a 20 and a 30 year sentence is substantial; the government does not quarrel with the notion that even on his "best day" Mr. Coleman will face a significant jail term. The defendant seeks the lower prison term in part because a sentence of 20 years will allow Mr. Coleman a chance to start his life over at "close to sixty years old." Actually, even a sentence of 30 years will allow him to be released from prison by the age of 62.[3]

The objectives of sentencing – promotion of respect for the law, protection of society by immobilization of unstoppable recidivists, and providing deterrence, both general and specific – will not be satisfied with a sentence of 20 years. The defendant is a dangerous and unrelenting drug dealer. While he has not been convicted of any crimes of violence, he was convicted in 1991 for possessing a loaded (19 rounds) TEC 9 mm, semiautomatic firearm and a .357 magnum revolver. See PSR at ¶ 44. Given the defendant has had no substantial employment history, or

---

[3] The defendant likely will be 54 years old upon release from prison after serving a 20 year sentence. He has been in custody since his arrest on April 4, 2003. With good time credit, he will serve 85% of his 20 year sentence, or 17 years, with credit from April 2003. This results in an approximate release date of April 2019, at which point the defendant will be 54 years old. With a 30 year sentence, the defendant will be approximately 62 years old upon release – an age that will permit him "the ability to start his life over." See Def's Memo at p. 12.

-8-

other legitimate means of income, there is no reasonable justification for having the two firearms. He has performed poorly while under court supervision too, getting arrested for domestic violence and being returned to jail.  And when arrested in this case, the defendant had a ski mask and gloves in his car.

### III.  Conclusion

The government respectfully submits that while the Court will impose a sentence of less that 360 months when Mr. Coleman is resentenced, it should not automatically free-fall to the statutorily mandated minimum term of 20 years.  Given the defendant's demonstrated performance after prior instances of judicial leniency, it is probable that Mr. Coleman will once again mistake leniency – imposition of the minimum sentence – with weakness.  Accordingly, consideration of this defendant's criminal history and willingness to embrace the criminal life and associations, warrants a sentence greater than 20 years.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY

    /s/
    MICHAEL J. GUSTAFSON
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar #  CT 1503
    157 Church Street
    New Haven, CT 06510
    Telephone No. (203) 821-3700

-9-

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing motion was sent via postage prepaid mail, on this 23rd day of January, 2006, to:

| | |
|---|---|
| Alan Sobol, Esq. | Carla Jo Wagenstein-Vega |
| O'Connell, Flaherty & Attmore, LLC | United States Probation Office |
| 280 Trumbull Street, 23rd floor | 915 Lafayette Boulevard |
| Hartford, CT 06103 | Room 200 |
| | Bridgeport, CT 06604 |

/s/ _____

MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY